NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0807n.06

**No. 12-1959**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Sep 04, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| VICTOR LUCAJ and MEGANN LUCAJ, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| | ) | |
| CITY OF TAYLOR, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| GINA STARZEC; KRISTINA CORNE, | ) | |
| | ) | |
| Defendants-Appellants. | | |

Before: SILER and COLE, Circuit Judges; DOWD, District Judge.[*]

**SILER**, Circuit Judge.  Victor and Megann Lucaj sued the City of Taylor and several police officers after their home was searched for marijuana plants that the Lucajs had reported to authorities and requested to be removed from their property.  The Lucajs claimed that the search violated their rights under the Fourth Amendment and raised several other claims, including excessive force, false arrest, false imprisonment, gross negligence, assault and battery, and intentional infliction of emotional distress.  The district court denied Gina Starzec's and Kristina Corne's motion for summary judgment on the basis of qualified immunity and they appeal.  For the reasons that follow, we **REVERSE** the district court's denial of summary judgment.

---

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

## I.

In April 2009, Victor Lucaj discovered three potted marijuana plants in his backyard near his property line. He reported the plants to the Taylor police, advised them that the plants did not belong to the Lucajs, and requested that the police remove the plants from the property.

That evening, Taylor Police Officer Jeffrey Shewchuk issued a Call For Service (CFS) regarding the marijuana plants, which he categorized as a health and safety violation. The CFS named the complainant as "Victor," and read: "Caller located suspected marijuana (potted) plants in his backyard. Please park a few houses away. He fears retaliation." Officer Starzec received the CFS on her computer and improperly categorized it as a narcotics investigation. She referred the matter to Officer Meggan Kantz of the Taylor Police Department. Starzec left a voice message on Kantz's phone, mistakenly identifying the Lucajs' neighbor as the complaining party rather than the Lucajs themselves. The voice mail stated:

> At 9012 Continental, 9012 Continental, that is in Labana Woods, Labana Woods at (inaudible) in the backyard of that residence there is potted weed plants growing in pots and the neighbor wants something done about it. There was a run put in for it. I'm passing it on to you. I am clearing out this run.

No police officers came to the Lucaj residence that evening.

The next morning, April 20, 2009, Mrs. Lucaj spoke to her brother, Aaron Burke, about the marijuana plants. Burke called his friend at the Taylor Police Department, who relayed the information to Sgt. Tony Neal of the Taylor Special Operations Unit.

Around 4:00 p.m. on April 20, Kantz and another officer went to the Lucajs' neighborhood to conduct surveillance. They observed pots containing marijuana plants in the Lucajs' backyard.

Kantz then prepared an affidavit for a search warrant of the Lucajs' residence. In preparing the search warrant affidavit, Kantz failed to follow established department procedures, which likely would have revealed that it was the Lucajs themselves that reported the marijuana plants. The affidavit stated: "Further, on 08/19/09 Officer Starzec from Taylor PD informed affiant they received a tip at the above address that they were growing marijuana in pots in their backyard. The tip was phone[d] in from an anonymous neighbor." The warrant was signed by a judge and issued at about 7:30 p.m. on April 20, 2009.

While Kantz was procuring the search warrant, Neal and Sgt. Jim Martin paid a visit to the Lucaj residence. Dressed in plain clothes, Neal and Martin arrived at about 7:30 p.m. After removing the marijuana plants from the backyard, the officers took the plants into the Lucajs' house for a brief period. Shortly thereafter, Neal and Martin left with the plants.

At 8:30 p.m., Kantz faxed a deconfliction form to the High Intensity Drug Trafficking Areas coordinator. The deconfliction form is used to prevent conflicts with other police agencies. The form advised that they would be executing a search warrant at the Lucaj residence at 8:30 p.m. Kantz did not directly notify the Taylor Special Operations Department that the Downriver Area Narcotics Organization ("DRANO") was planning to execute the search warrant.

When the DRANO team arrived at the Lucaj residence, they noticed that the plants were no longer in the backyard. A neighbor informed the officers that men dressed in plain clothes had taken the plants into the Lucaj home shortly before DRANO's arrival. At that point, the team executed the search warrant. Though the DRANO team knocked and announced their presence, Mrs. Lucaj was in the bathroom and could not immediately answer the door. Fearing destruction of evidence,

the team forced entry into the home. As Mrs. Lucaj exited the second-floor bathroom and walked toward the stairwell, officers shouted for her to put her hands up. One of the officers pushed her to the ground, put a knee on her back, and frisked her. During this time, Mrs. Lucaj asked the officers who they were and told them that Taylor police officers had already been to her home and had removed the marijuana plants. Mrs. Lucaj explained that one of the officers had given his business card to her husband. She retrieved the business card and gave it to the officers. Kantz called Neal, who confirmed that he had been at the Lucajs' residence thirty minutes prior and had removed the marijuana plants from the property.

At some point during the execution of the search warrant, Officers Corne and Starzec conducted a K-9 (dog) sweep of the premises. The Lucajs contend that the K-9 sweep occurred after the misunderstanding had been resolved and the search had been formally called off. The district court found that there was some evidence that Starzec and Corne had acted unreasonably by conducting the K-9 sweep after Kantz's conversation with Neal and, thus, they were not entitled to qualified immunity.

## II.

Contrary to the Lucajs' contention, we have jurisdiction to entertain this interlocutory appeal. It is true that we lack jurisdiction to consider a district court's summary judgment order "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones,* 515 U.S. 304, 319-20 (1995). However, such orders are immediately appealable if the defendant asserted the defense of qualified immunity and the issue appealed concerns whether a given set of facts shows a violation of clearly established federal law. *Mitchell v. Forsyth,* 472

U.S. 511, 528 (1985). In other words, jurisdiction is conferred where the defendant's appeal "involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established federal law." *Gregory v. City of Louisville,* 444 F.3d 725, 742 (6th Cir. 2006). Here, Defendants do not dispute the Lucajs' version of the facts as supported by the record. Rather, they contend that those facts entitle them to qualified immunity as a matter of law. Because this is a legal dispute not a factual one we have jurisdiction to resolve it at this time.

**III.**

We review a district court's denial of summary judgment on the basis of qualified immunity *de novo. Walker v. Davis,* 649 F.3d 502, 503 (6th Cir. 2011). The sole issue upon appeal is whether the district court erred in denying Starzec's and Corne's motion for summary judgment on the basis of qualified immunity. Because the Lucajs have failed to come forward with any evidence that Starzec or Corne knew or had reason to know of the circumstances regarding the search before or during the K-9 sweep, Starzec and Corne are entitled to summary judgment.

The Lucajs have failed to identify any evidence in the record supporting the contention that Starzec and Corne conducted a K-9 sweep when they knew or should have known that the search was in error or had been called off. Even if the K-9 sweep occurred after Kantz's conversation with Neal, as Lucaj claims, the record does not show that Starzec and Corne had knowledge of Kantz's conversation with Neal before or during the K-9 sweep. Mrs. Lucaj testified that Corne was "down the hall" while she was in the kitchen with other officers attempting to explain that a mistake had been made. The Lucajs contend that Kantz relayed the information from Neal "to the other officers in her presence" and that "the search was called off at that point." Mrs. Lucaj does not contend

specifically, however, that Starzec and Corne were in Kantz's presence when the information was relayed.

Without citing to the record, the Lucajs contend that "[a]fter the conclusion of the phone call with Sgt. Neal, Cpl. Kantz relayed the information to Lt. Pizana, who then told all of the officers to end the search and leave." At that point, the Lucajs argue, Corne asked Mrs. Lucaj about her cat because Corne and Starzec were preparing for the K-9 sweep. The Lucajs fail to identify any evidence in the record, however, that Pizana told the officers to end the search and leave, much less prior to the time of the K-9 sweep conducted by Corne and Starzec. Mrs. Lucaj testified that officers on the scene talked to Neal on the phone and "the next thing [she] remember[ed]" was Corne's asking her if she had a cat. Mrs. Lucaj failed to recall Pizana, or anyone, calling off the search or telling the officers to leave. The Lucajs cannot create a genuine issue and thus defeat a motion for summary judgment by alleging a fact that is without support in the record. *See Gallagher v. C.H. Robinson Worldwide, Inc.,* 567 F.3d 263, 270 (6th Cir. 2009) ("A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."). Further, it is well settled that qualified immunity must be assessed in the context of each individual's specific conduct. *Binay v. Bettendorf,* 601 F.3d 640, 650 (6th Cir. 2010). The district court erred by attributing Kantz's knowledge following her conversation with Neal to Corne and Starzec to conclude that they should have known that the search was erroneous.

Because no reasonable jury could find that Starzec or Corne knew or should have known that the search was erroneous prior to conducting the K-9 sweep, the district court's denial of summary

No. 12-1959
*Lucaj v. City of Taylor*

judgment is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this

opinion.